**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

| | |
|---|---|
| In re: | Chapter 11 |
| INNKEEPERS USA TRUST, *et al.*, | Case No. 10-13800 (SCC) |
| Debtors. | Jointly Administered |
| INNKEEPERS USA TRUST, *et al.*, | |
| Plaintiffs, | |
| v. | Adversary Proceeding |
| CERBERUS SERIES FOUR HOLDINGS, LLC, CHATHAM LODGING TRUST, INK ACQUISITION LLC, AND INK ACQUISITION II LLC, | Case No. 11-02557 |
| Defendants. | |

----------------------------------------------------------x

## ANSWER OF CERBERUS SERIES FOUR HOLDINGS, LLC, INK ACQUISITION LLC, AND INK ACQUISITION II LLC TO THE DEBTORS' COMPLAINT

Defendants Cerberus Series Four Holdings, LLC ("Cerberus"), INK Acquisition LLC ("INK I"), and INK Acquisition II LLC ("INK II") (collectively, the "Cerberus Entities"), by and through their attorneys, Schulte Roth & Zabel LLP, in response to the Complaint of Innkeepers USA Trust and its affiliated debtor entities (the "Debtors"), dated as of August 29, 2011 (the "Complaint"), states as follows:

Plaintiffs' Complaint fails to advise this Court of a crucial and irrefutable fact: Plaintiffs' sole remedy in law or in equity against the Defendants for any breach of the Commitment Letter (defined below) is to retain Defendants' $20 million deposit (plus accrued interest) as liquidated damages. That limitation is succinctly set forth in Section 8 of the Bidding Procedures for the Fixed/Floating Debtors approved by this Court's March 11, 2011 Order (the

"Bidding Procedures Order") and reaffirmed by the terms of the Amended and Restated Binding Commitment Agreement Regarding the Acquisition and Restructuring of Certain Subsidiaries of Innkeepers USA Trust, dated as of May 16, 2011 (the "Commitment Letter").

Against that immutable fact, the Court must determine whether a Material Adverse Effect ("MAE") has occurred giving rise to a Termination Event under the Commitment Letter, the Amended and Restated Term Sheet, attached as Exhibit B to the Commitment Letter (the "Term Sheet"), and the Bidding Procedures Order, which would entitle Defendants to the return of the $20 million Defendants deposited into escrow in accordance with both the terms of the Bidding Procedures Order and the Commitment Letter. Defendants are entitled to the return of the deposit as a result of their proper termination of the Commitment Letter upon the occurrence of an MAE.

Even if this Court were to determine that an MAE had not occurred, however, there is no basis whatsoever, in view of the plain and unambiguous language of the Bidding Procedures Order and the Commitment Letter, for Plaintiffs to seek <u>any</u> equitable remedies or monetary damages from the Defendants other than the retention of the deposit as liquidated damages. Although the Complaint conveniently makes no mention of it, Plaintiffs expressly agreed, and this Court expressly approved, the limitation of damages to the Defendants' deposit in the event that Defendants breached the Commitment Letter.

On March 11, 2011, the Court approved the Debtors' motion for entry of the Fixed/Floating Debtors Bidding Procedures [Docket No. 1009]). The Bidding Procedures Order sets forth the procedures, rights and obligations of all entities participating in the auction process, including the Debtors and Defendants. Among the provisions proposed by the Debtors, and approved by the Court, is a deposit and liquidated damages provision: Section 8 expressly

provides that in the event of a breach or failure to perform by the "Successful Bidder," "[r]etention of the Deposit, plus accrued interest, as liquidated damages shall be the Fixed/Floating Debtors' <u>sole remedy at law and in equity</u> against the Successful Bidder[.]" (Emphasis added). In other words, by Court Order <u>procured by the Debtors</u>, any damages for breach of the Commitment Letter are limited to the $20 million amount of Defendants' deposit, and both specific performance and any compensatory damages are specifically excluded as remedies.

Following the May 2, 2011 auction, Innkeepers, the Cerberus Entities and Chatham executed the Commitment Letter, having previously placed a $20 million deposit into escrow in accordance with the Bidding Procedures Order, and the Commitment Letter clearly reflects the applicability of the Bidding Procedures Order. Paragraph 6 of the Commitment Letter plainly states: "<u>In accordance with the Bidding Procedures Order,</u> the Plan Sponsors [(*i.e.*, the Cerberus Entities and Chatham)] have deposited cash in an amount equal to $20 million (the '<u>Deposit</u>')." (Emphasis added). Accordingly, the parties unambiguously agreed that in the event of a breach or failure to perform under the Commitment Letter, the "sole remedy" available to Innkeepers is retention of the deposit as liquidated damages. The Defendants properly relied on the protections of the Bidding Procedures Order and Paragraph 6 of the Commitment Letter, and neither Plaintiffs nor Defendants have ever waived the rights and protections of the Bidding Procedures Order; nor has this Court at any time modified, altered or rescinded the Bidding Procedures Order.

Plaintiffs' newly contrived position that the Defendants do not enjoy the benefits of the Bidding Procedures Order (including the liquidated damages provision) was raised for the very first time in the Complaint. That Plaintiffs never raised the issue before is unsurprising

inasmuch as counsel for the Debtors repeatedly made clear at the auction that it was being conducted subject to and in accordance with the Bidding Procedures Order. Indeed, counsel for the Debtors told the Court that "[t]he debtors are administering today's auction with respect to the fixed and floating hotels pursuant to those [bid] procedures." *In re Innkeepers USA Trust*, Auction Hearing Tr. at 13 (S.D.N.Y. Bankr. May 2, 2011); *see also, e.g., id.* at 14 ("As the Bid Procedures set forth, by submitting a bid you are confirming that you will be abiding by the Bid Procedures that have been approved by the Court[.]"). And, upon submission of Defendants' initial bid at the auction, counsel for the Defendants, at the request of Debtors' counsel, confirmed on the record that the bid was submitted in accordance with the Bidding Procedures Order. *Id.* at 19.

Despite the fact that Defendants' purported waiver of the liquidated damages protections set forth in the Bidding Procedures Order would have been both a highly material and beneficial contractual term *favoring the Debtors* and significantly distinguishing Defendants' bid from the Five Mile/Lehman bid, Plaintiffs never mentioned any such distinction at the auction, in the disclosure statement, or at any hearing on approval of the successful bid, approval of the disclosure statement, or confirmation of the plan of reorganization. Plaintiffs never raised such a distinction between the two competing bids because no such distinction exists.

Thus, this is a case that calls upon the Court to decide whether an MAE has occurred and which party is entitled to the deposit. There is no contractual or other legal basis for Plaintiffs' entirely new assertion that the extraordinary equitable remedy of specific performance is available, and the Court need not consider such arguments in the face of the plain, black and white, provisions of the Bidding Procedures Order and the Commitment Letter. Nor is this a case in which purported compensatory damages, if any, are at issue because, even if Plaintiffs were

able to establish that Defendants have breached their obligations under the terms of the Commitment Letter and the Term Sheet on the basis that an MAE did not occur or otherwise (and they have not), Plaintiffs' "sole and exclusive remedy in law and in equity" would be retention of the $20 million deposit (plus accrued interest).

The Commitment Letter and the Term Sheet provided Defendants with a contractual right to declare a "Termination Event" in a number of circumstances, including upon:

> [t]he occurrence of any condition, change or development that could reasonably be expected to have a material adverse effect on the business, assets, liabilities (actual or contingent), or operations, condition (financial or otherwise) or prospects of the Fixed/Floating Debtors taken as a whole. (Emphasis added).

Significantly, the *only* carve-out from the scope of what otherwise is a broad material adverse effect clause is as follows: "provided, however, that this Termination Event shall not apply to the chapter 11 case of Grand Prix West Palm Beach LLC." The circumstances of the Defendants' exercise of this termination right had nothing to do with Grand Prix West Palm Beach LLC, and everything to do with changes and developments that can be reasonably expected to have a material adverse effect on the prospects of the Fixed/Floating Debtors.

Since May 16, 2011, the date on which Defendants executed the Commitment Letter, unforeseeable, unprecedented and materially adverse economic developments have occurred that can reasonably be expected to have, and have already had, a material adverse effect on, among other things, the assets, business, operations and prospects of the Fixed/Floating Debtors. It cannot be seriously disputed that adverse changes in the debt and equity capital markets between May 16, 2011 and today—including a 30 to 40 percent decline in the equity market value of comparable hotel operators, Standard & Poor's downgrade of the United States' credit rating, severe tightening of the capital markets, and according to recent analyst reports, a

close to 50-50 chance of a "double dip" recession (*see* David Leonhart, *Rising Fears of Recession*, N.Y. Times, Sept. 8, 2011, at A1)—can reasonably be expected to result in a material adverse effect on, among other things, the assets, business, operations and prospects of the Fixed/Floating Debtors. Indeed, these events have already adversely affected, at a minimum, the business, assets and the prospects of the Debtors, although Defendants need not even prove that to establish the occurrence of a Termination Event under the applicable documents.

As a result, Defendants exercised their express right under the terms of the Commitment Letter, the Term Sheet and the Bidding Procedures Order to declare a Termination Event and terminate the Commitment Letter and Term Sheet.

Accordingly, and against this backdrop, the Defendants answer the specific allegations of the Complaint of Innkeepers USA Trust and its affiliated debtor entities, dated as of August 29, 2011, as follows:

1. Deny the allegations in paragraph 1 of the Complaint, except (i) aver that the first, third, sixth, and tenth sentences set forth legal conclusions to which no response is required; (ii) deny knowledge or information sufficient to form a belief as to the truth of the allegations in the eighth sentence; (iii) admit that Debtors purport to seek the relief described in the eleventh sentence, and further state that Debtors are not entitled to such relief; and (iv) with respect to the seventh sentence, respectfully refer the Court to the Commitment Letter and the Term Sheet for a full and complete statement of the contents thereof.

2. Deny the allegations in paragraph 2 of the Complaint, except admit that the Cerberus Entities executed the Commitment Letter on May 16, 2011 and that the Commitment Letter sets forth certain of the terms of the transaction contemplated by it, and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding

Procedures Order for a full and complete statement of the terms governing the terms pursuant to which Cerberus and Chatham were to acquire the Fixed/Floating Properties (the "Transaction").

3.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 3 as they pertain to entities other than the Cerberus Entities, admit the remaining allegations in paragraph 3, and respectfully refer the Court to the full transcript of the August 2, 2011 hearing for a full and complete statement of the contents thereof.

4.      Deny the allegations in paragraph 4 of the Complaint, except admit that Cerberus informed the Debtors on August 5, 2011 that it was not prepared to close the deal contemplated by the Commitment Letter on August 5, 2011 and deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third and fifth sentences of paragraph 4.

5.      Deny the allegations in paragraph 5 of the Complaint, except admit that on August 9, 2011, Cerberus informed the Debtors that it was analyzing whether a material adverse effect had occurred, and that the Debtors disputed the occurrence of a material adverse effect.

6.      Deny the allegations in paragraph 6 of the Complaint, except admit that representatives of the Debtors and Cerberus had telephonic discussions on August 19, 2011.

7.      Deny the allegations in paragraph 7 of the Complaint, except admit that on August 19, 2011, Cerberus and Chatham sent a letter by facsimile to the Debtors and Midland and their respective counsel terminating the Commitment Letter in accordance with the provisions of the Commitment Letter, the Term Sheet and the Bidding Procedures Order.  The Cerberus Entities further respectfully refer the Court to the referenced letter, as well as to the

Commitment Letter, the Term Sheet and the Bidding Procedures Order, for a full and complete statement of the terms governing the Transaction.

8. Deny the allegations in paragraph 8 of the Complaint, and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction. The Cerberus Entities further aver that the first clause of the third sentence of paragraph 8 sets forth legal conclusions to which no response is required, and deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second clause of the third sentence.

9. Deny the allegations in paragraph 9 of the Complaint, except admit that Cerberus and Chatham executed the Commitment Letter on May 16, 2011, and aver that the third and fourth sentences in paragraph 9 set forth legal conclusions to which no response is required.

10. Deny the allegations in the first sentence of paragraph 10 and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10.

11. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and respectfully refer the Court to the referenced article for a full and complete statement of the contents thereof.

12. Deny the allegations in paragraph 12 of the Complaint, except aver that to the extent paragraph 12 sets forth legal conclusions, no response is required.

13. Admit that Debtors purport to seek the relief described in paragraph 13 of the Complaint, and further state that Debtors are not entitled to the relief they seek.

14.     Admit, upon information and belief, the allegations in paragraph 14 of the Complaint and respectfully refer the Court to the referenced bankruptcy petition for a full and complete statement of the contents thereof.

15.     Admit, upon information and belief, the allegations in paragraph 15 of the Complaint.

16.     Admit the allegations in paragraph 16 of the Complaint that Cerberus Series Four Holdings, LLC is a Delaware limited liability company with its principal place of business in New York and that it is an affiliate of Cerberus Capital Management, L.P.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     Admit the allegations in paragraph 18 of the Complaint that INK I is a limited liability company that was formed in Delaware in connection with the transaction contemplated by the Commitment Letter.

19.     Admit the allegations in paragraph 19 of the Complaint that INK II is a limited liability company that was formed in Delaware in connection with the transaction contemplated by the Commitment Letter.

20.     Aver that paragraph 20 of the Complaint sets forth legal conclusions to which no response is required.

21.     Aver that paragraph 21 of the Complaint sets forth legal conclusions to which no response is required.

22.     Admit the allegations in paragraph 22 of the Complaint, and respectfully refer the Court to the referenced order for a full and complete statement of the contents thereof

and to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

23. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, except admit, upon information and belief, that on January 14, 2011, the Five Mile/Lehman January Commitment Letter was executed and the Debtors filed a motion in connection with their efforts to sell the Fixed/Floating Properties, and respectfully refer the Court to the referenced motion for a full and complete statement of the contents thereof.

25. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint, except admit, on information and belief, that the executed Five Mile/Lehman March Amended Commitment Letter is dated March 9, 2011.

26. Admit the allegation in paragraph 26 of the Complaint that the Court entered an order on March 11, 2011 and respectfully refer the Court to the referenced motion for a full and complete statement of the contents thereof.

27. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint, except admit that Cerberus and Chatham submitted a joint bid for the Fixed/Floating Properties and that their joint bid was deemed to be a "qualified overbid."

29. Deny the allegations in paragraph 29 of the Complaint, except admit that Cerberus and Chatham were required to submit with their bid for the Fixed/Floating Properties a marked copy of the Five Mile/Lehman March Amended Commitment Letter and Term Sheet reflecting the changes Cerberus and Chatham proposed to that letter and term sheet.

30. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint, except aver that the first sentence sets forth legal conclusions to which no response is required.

31. Deny the allegations set forth in paragraph 31 of the Complaint, except admit that on April 25, 2011, Cerberus and Chatham submitted a bid for the Fixed/Floating Properties that included a marked copy of the Five Mile/Lehman March Amended Commitment Letter and Term Sheet, and that Cerberus and Chatham subsequently engaged in negotiations with the Debtors that resulted in the execution of the Commitment Letter.

32. Deny the allegations in paragraph 32 of the Complaint, except admit that Cerberus and Chatham did not propose any changes to the MAE provision included in the Five Mile/Lehman March Amended Commitment Letter and Term Sheet, and aver that the last clause of the second sentence of paragraph 32 sets forth legal conclusions to which no response is required.

33. Admit the allegations in paragraph 33 of the Complaint and respectfully refer the Court to the referenced agreement for a full and complete statement of the contents thereof.

34. Admit the allegations in paragraph 34 of the Complaint.

35. Admit the allegations in paragraph 35 of the Complaint.

36.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Complaint, except admit that following twelve rounds of bidding, the Debtors accepted a bid from Cerberus and Chatham valued at $1,124,699,882.38.

37.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Complaint, except admit that the successful bid submitted by Cerberus and Chatham was for $154 million more than the Five Mile/Lehman bid contemplated by the Five Mile/Lehman March Amended Commitment Letter.

38.     Admit the allegations in paragraph 38 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

39.     Deny the allegations in paragraph 39 of the Complaint, except admit that the Commitment Letter, the Term Sheet and the Bidding Procedures Order set forth the terms pursuant to which Cerberus and Chatham were to acquire the Fixed/Floating Properties, and respectfully refer the Court to those documents for a full and complete statement of the terms governing the Transaction.

40.     Admit the allegations in paragraph 40 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

41.     Admit the allegations in paragraph 41 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

42.     Admit the allegations in paragraph 42 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

43.     Deny the allegations in paragraph 43 of the Complaint, except admit that the Cerberus Entities are parties to the Commitment Letter, to which the Term Sheet is an exhibit, and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

44.     Aver that paragraph 44 of the Complaint sets forth legal conclusions to which no response is required.

45.     Deny the allegations in paragraph 45 of the Complaint, except admit that the Cerberus Entities are parties to the Commitment Letter and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

46.     Admit the allegations in paragraph 46 of the Complaint and respectfully refer the Court to the Commitment Letter for a full and complete statement of the contents thereof.

47.     Admit the allegations in paragraph 47 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

48.     Deny the allegations in paragraph 48 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

49.     Admit the allegations in paragraph 49 of the Complaint and respectfully refer the Court to the referenced documents, as well as the Commitment Letter, the Term Sheet and the Bidding Procedures Order, for a full and complete statement of the terms governing the Transaction.

50.     Admit the allegations in paragraph 50 of the Complaint and respectfully refer the Court to the referenced order, as well as the Commitment Letter, the Term Sheet and the Bidding Procedures Order, for a full and complete statement of the terms governing the Transaction.

51.     Admit the allegations in paragraph 51 of the Complaint and respectfully refer the Court to the Confirmation Order and the Debtors' Plan of Reorganization for a full and complete statement of the contents thereof.

52.     Aver that paragraph 52 of the Complaint sets forth legal conclusions to which no response is required.

53.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 53 of the Complaint.

54.     Admit the allegations in paragraph 54 in the Complaint.

55.     Deny the allegation in the first sentence of paragraph 55 of the Complaint that Cerberus requested that the Debtors seek Court approval of certain post-petition transactions entered into by the Debtors and admit the remaining allegations in paragraph 55.

56.     Admit the allegations in paragraph 56 of the Complaint and respectfully refer the Court to the full transcript of the August 2, 2011 hearing for a full and complete statement of the contents thereof.

57.     Deny the allegations in paragraph 57 of the Complaint, except admit that counsel for Cerberus and counsel for the Debtors communicated on August 5, 2011.  The Cerberus Entities further deny knowledge or information sufficient to form a belief as to the allegations in the second and third sentences in paragraph 57.

58.     Deny the allegations in the first sentence of paragraph 58 of the Complaint and deny knowledge or information sufficient to form a belief as to the allegations in the second sentence.

59.     Deny the allegations in paragraph 59 of the Complaint, except admit that counsel for the Debtors and counsel for the Cerberus Entities communicated with each other numerous times on August 5, 2011.

60.      Deny the allegations in paragraph 60 of the Complaint, except admit that counsel for the Debtors and counsel for the Cerberus Entities communicated with each other numerous times on August 6, 2011.

61.     Deny the allegations in paragraph 61 of the Complaint, except admit that numerous communications took place between the Cerberus Entities and the Debtors on August 8 and 9, 2011, and during telephone conversations on August 9, 2011 Cerberus advised the Debtors that it was analyzing whether a material adverse effect had occurred.

62.     Deny the allegations in paragraph 62 of the Complaint, except admit that Tom Wagner spoke with Marc Beilinson on August 10, 2011.

63.     Deny the allegations in paragraph 63 of the Complaint, except admit that on August 19, 2011, the Debtors indicated that they were prepared to close the transaction contemplated in the Commitment Letter and that Cerberus did not engage in any negotiations with the Debtors regarding the terms of the Commitment Letter.

64. Admit the allegations in paragraph 64 of the Complaint.

65. Deny the allegations in paragraph 65 of the Complaint and respectfully refer the Court to the referenced letter for a full and complete statement of the contents thereof.

66. Deny the allegations in paragraph 66 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence.

67. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint, except admit that the Cerberus Entities received the referenced budget.

68. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Complaint.

69. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69 of the Complaint.

70. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 of the Complaint.

71. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint.

72. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72 of the Complaint.

73. In response to paragraph 73 of the Complaint, the Cerberus Entities repeat and realleges their responses to paragraphs 1 through 72 of the Complaint with the same force and effect as if set forth in full herein.

74. Admit the allegations in paragraph 74 of the Complaint.

75.     Aver that paragraph 75 of the Complaint sets forth legal conclusions to which no response is required.

76.     Admit the allegations in paragraph 76 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

77.     Deny the allegations in paragraph 77 of the Complaint.

78.     Deny the allegations in paragraph 78 of the Complaint.

79.     Admit that Debtors purport to seek the relief described in paragraph 79 of the Complaint, and further state that Debtors are not entitled to the relief they seek.

80.     In response to paragraph 80 of the Complaint, the Cerberus Entities repeat and realleges their responses to paragraphs 1 through 79 of the Complaint with the same force and effect as if set forth in full herein.

81.     Admit the allegations in paragraph 81 and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

82.     Aver that paragraph 82 of the Complaint sets forth legal conclusions to which no response is required.

83.     Deny the allegations in paragraph 83 of the Complaint.

84.     Deny the allegations in paragraph 84 of the Complaint.

85.     Deny the allegations in paragraph 85 of the Complaint.

86.     Deny the allegations in paragraph 86 of the Complaint.

87.     Deny the allegations in paragraph 87 of the Complaint.

88.     Deny the allegations in paragraph 88 of the Complaint.

89.     Deny the allegations in paragraph 89 of the Complaint.

90.     Deny the allegations in paragraph 90 of the Complaint.

91.     Deny the allegations in paragraph 91 of the Complaint.

92.     Aver that paragraph 92 of the Complaint sets forth legal conclusions to which no response is required and aver further that in accordance with the Bidding Procedures Order, the Debtors' retention of the deposit submitted by the Cerberus Entities and Chatham in connection with their bid, plus accrued interest, "as liquidated damages, shall be the [Debtors'] sole remedy at law and in equity" in the event Cerberus and Chatham failed to consummate the transaction "because of a breach or failure to perform."

93.     In response to paragraph 93 of the Complaint, the Cerberus Entities repeat and realleges their responses to paragraphs 1 through 92 of the Complaint with the same force and effect as if set forth in full herein.

94.     Admit the allegations in paragraph 94 and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

95.     Aver that paragraph 95 of the Complaint sets forth legal conclusions to which no response is required.

96.     Deny the allegations in paragraph 96 of the Complaint.

97.     Deny the allegations in paragraph 97 of the Complaint.

98.     Deny the allegations in paragraph 98 of the Complaint.

99.     Deny the allegations in paragraph 99 of the Complaint.

100.    Deny the allegations in paragraph 100 of the Complaint.

101.    Deny the allegations in paragraph 101 of the Complaint.

102.    Deny the allegations in paragraph 102 of the Complaint.

103.    Deny the allegations in paragraph 103 of the Complaint.

104.    In response to paragraph 104 of the Complaint, the Cerberus Entities repeat and realleges their responses to paragraphs 1 through 103 of the Complaint with the same force and effect as if set forth in full herein.

105.    Admit the allegation in paragraph 105 of the Complaint that the Court entered a confirmation order on June 29, 2011 and respectfully refer the Court to the referenced order for a full and complete statement of the contents thereof.

106.    Aver that paragraph 106 of the Complaint sets forth legal conclusions to which no response is required.

107.    Deny the allegations in paragraph 107 of the Complaint.

108.    Deny the allegations in paragraph 108 of the Complaint.

109.    Deny the allegations in paragraph 109 of the Complaint.

110.    Deny the allegations in paragraph 110 of the Complaint.

111.    Deny the allegations in paragraph 111 of the Complaint.

112.    Deny the allegations in paragraph 112 of the Complaint.

113.    Deny the allegations in paragraph 113 of the Complaint.

114.    Deny the allegations in paragraph 114 of the Complaint.

115.    In response to paragraph 115 of the Complaint, the Cerberus Entities repeat and realleges their responses to paragraphs 1 through 114 of the Complaint with the same force and effect as if set forth in full herein.

116. Deny the allegations in paragraph 116 of the Complaint and respectfully refer the Court to the Commitment Letter, the Term Sheet and the Bidding Procedures Order for a full and complete statement of the terms governing the Transaction.

117. Aver that paragraph 117 of the Complaint sets forth legal conclusions to which no response is required.

118. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118.

119. Deny the allegations in paragraph 119 of the Complaint.

120. The Cerberus Entities further state that to the extent that any allegation asserted in the Complaint is not specifically addressed herein, such allegation is hereby expressly denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

121. Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate their damages.

### SECOND AFFIRMATIVE DEFENSE

122. The Complaint, and each and every claim therein, fails to state a claim upon which relief can be granted and therefore, pursuant to Fed. R. Bankr. P. 7012, should be dismissed.

### THIRD AFFIRMATIVE DEFENSE

123. Plaintiffs' claims are barred by the doctrines of waiver, estoppel, laches, acquiescence, unclean hands, unjust enrichment, and/or ratification, as well as other applicable equitable doctrines.

## FOURTH AFFIRMATIVE DEFENSE

124.    Any losses Plaintiffs sustained were not caused by any conduct of the

Cerberus Entities.

**WHEREFORE**, the Cerberus Entities pray for judgment against Plaintiffs

dismissing the Complaint in its entirety with prejudice with costs and such other and further

relief as this Court deems just and proper.



Dated:  New York, New York            SCHULTE ROTH & ZABEL LLP
       September 9, 2011


By: /s/ Howard O. Godnick
    Alan R. Glickman
    Howard O. Godnick
    Adam C. Harris
    Michael E.Swartz

919 Third Avenue
New York, New York  10022
(212) 756-2000

*Attorneys for Cerberus Series Four Holdings,*
*LLC, INK Acquisition LLC, and*
*INK Acquisition II LLC*